UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER ANDERSON,<br><br>Defendant. | Case No. 2:13-cr-00123-APG-PAL<br><br>**ORDER DENYING INVOLUNTARY MEDICATION OF DEFENDANT** |

Defendant Christopher Anderson is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. #1.) I previously ordered the Attorney General of the United States to hospitalize defendant Christopher Anderson for psychological examination and treatment. (Dkt. #62.) The Bureau of Prisons diagnosed Mr. Anderson with schizophrenia. The Government has requested that Mr. Anderson be involuntarily medicated to restore him to competency so he may stand trial. In response to my June 11, 2015 order (Dkt. #68), the Government confirmed that it is unaware of any bases for forcibly medicating Mr. Anderson other than to restore him to competency for trial. (Dkt. #69.) Based on that response, I found that no other basis for forcibly administering medication to Mr. Anderson is reasonably available, pursuant to *United States v. Hernandez-Vasquez*, 513 F.3d 908, 914 (9th Cir. 2008). (Dkt. #71.)

I conducted a *Sell* hearing on October 7, 19, and 21, 2015.[1] Because the Government has not satisfied each of the four *Sell* factors by clear and convincing evidence, I deny the Government's request to involuntarily medicate Mr. Anderson.

**Involuntary mediation is rarely approved.**

Involuntary medication of a defendant is allowed only "in rare circumstances." *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1138 (9th Cir. 2005). "The importance of the

---

[1] *Sell v. United States*, 539 U.S. 166 (2003).

defendant's liberty interest, the powerful and permanent effects of anti-psychotic medications, and the strong possibility that a defendant's trial will be adversely affected by the drug's side-effects all counsel in favor of ensuring that an involuntary medication order is issued only after both sides have had a fair opportunity to present their case and develop a complete and reliable record." *Id.* Thus, a *Sell* evidentiary hearing is required before a defendant may be involuntarily medicated to restore him to competency for trial. *Id.*

> [U]nder *Sell*, the government cannot involuntarily medicate a mentally ill defendant for the purpose of rendering him competent to stand trial unless it proves (1) "that important governmental interests are at stake;" (2) "that involuntary medication will significantly further those concomitant state interests;" (3) "that involuntary medication is necessary to further those interests;" and (4) "that administration of the drugs is medically appropriate." *Sell*, 539 U.S. at 180-81, 123 S.Ct. 2174.

*United States v. Ruiz-Gaxiola*, 623 F.3d 684, 691 (9th Cir. 2010). "The *Sell* factors do not represent a balancing test, but a set of independent requirements, each of which must be found to be true before the forcible administration of psychotropic drugs may be considered constitutionally permissible." *Id.* (citation omitted). "Because of the importance of the liberty interests implicated by a *Sell* order and the high risk of error, every circuit to address the issue has concluded that the government must bear the burden of proving the relevant facts by clear and convincing evidence." *Id.* at 692.

**The Government has not satisfied its burden of proving by clear and convincing evidence that an important governmental interest is at stake.**

"The Government's interest in bringing to trial an individual accused of a serious crime is important." *Sell*, 539 U.S. at 180. The Ninth Circuit directs that, in evaluating the first *Sell* factor, I must consider the seriousness of the underlying offense, based in part on the penalty that Mr. Anderson would face if convicted. *United States v. Brooks*, 750 F.3d 1090, 1096-98 (9th Cir. 2014). The "likely guideline range is the appropriate starting point for [this] analysis." *Hernandez-Vasquez*, 513 F.3d at 919.

I ordered the parties to submit supplemental briefs regarding the likely range of imprisonment that Mr. Anderson would face under the sentencing guidelines if convicted of the charged crime. (Dkt. #84.) The Government anticipates that the guidelines would dictate a total offense level of 26, and a criminal history category of III, yielding a sentence in the range of 78 – 97 months in custody. (Dkt. #85.) The Government's calculation starts with a Base Offense Level of 20 under Sentencing Guideline § 2K2.1(a)(4)(A),[2] adds four levels under §2K2.1(b)(6)(B) because possession occurred in connection to a felony offense, and adds two levels under § 2K2.1(b)(4)(A) because the firearm was stolen. (*Id.*)

Mr. Anderson disagrees with the Government's calculation in several respects. (Dkt. #86.) First, he asserts that the Base Offense Level should be 14 because his prior robbery conviction under Nev. Rev. Stat. § 200.380 does not qualify as a crime of violence under *United States v. Johnson*, 135 S.Ct. 2552 (2015), and *United States v. Descamps*, 133 S.Ct. 2276 (2013). (*Id.* at 2.) He objects to the four-level enhancement under § 2K2.1(b)(6)(B) because he is not charged with any other felony offense and the State of Nevada dismissed all charges against him. (*Id.*) Thus, he argues, significant additional evidence must be presented before that enhancement can be applied. Finally, Mr. Anderson objects to the two-level enhancement under § 2K2.1(b)(4)(A) because there is no evidence the firearm was stolen. (*Id.* at 3.) Thus, Mr. Anderson anticipates a total offense level of either 14 or 16 (if the firearm was stolen). (Dkt. #86.) Mr. Anderson is unaware of his criminal history but concludes that if the Government is correct that a criminal history category of III applies, he faces a custodial sentence in the range of 21 - 27 months (at a level of 14) or 24 – 30 months (at a level of 16).

Neither party offers evidence to support its position, so it is difficult to determine this issue. However, the Government "must bear the burden of proving the relevant facts by clear and convincing evidence." *Ruiz-Gaxiola*, 623 F.3d at 692. Because it has offered no evidence to

---

[2] This section applies if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense…."

justify its calculation of a sentence in the range of 78 – 97 months in custody, I cannot rely upon that calculation. Thus, the range of possible incarceration is 21 – 30 months.

I next must consider "the potential for and anticipated length of future civil commitment in the event the defendant is not medicated and the amount of time the defendant has already been confined, versus the period of confinement that could reasonably be expected if the defendant were restored to competency and convicted of the charged offense." *Brooks*, 750 F.3d at 1097. If Mr. Anderson is civilly committed, it is unclear how long he will remain confined. Both Dr. DeMier and Dr. Sarrazin opined that Mr. Anderson will not become competent on his own without medication. (Dkt. #78 at 25 (Testimony of Dr. DeMier on October 7, 2015); *Id.* at 117-118 (Testimony of Dr. Sarrazin).) Thus, without medication Mr. Anderson presumably will spend the rest of his days in confinement. Dr. DeMier could not opine on how long it would take for Mr. Anderson to be restored to competency if he is medicated during a civil commitment. (Dkt. #78 at 31-33 (Testimony of Dr. DeMier on October 7, 2015.))[3] If he is civilly committed, he could remain committed for an indeterminate period of time. (*Id.*)

Thus, Mr. Anderson's refusal to take medication "may mean a lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Sell*, 539 U.S. at 180.

> We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the

---

[3] When asked how long Mr. Anderson would be civilly committed, Dr. DeMier responded:

[T]here's no determinant length and people certainly vary in their response to treatment. We see some people who respond quickly and I've seen people that have been civilly committed and released within a matter of months, usually with some conditions that they have to comply with. The acuity of the patients at Springfield is such that we also see people that don't respond to treatment. In fact, we have a disproportionate number of people at our facility that haven't responded to any of the many psychiatric treatments that are available and are, for lack of a better word, stuck there until we find something that works.

> defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b)). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

*Id.* To date, Mr. Anderson has been in federal custody since April 2014, approximately 20 months. This is one month shy of the length of the low end of the sentencing guideline range he would face, and is two-thirds of the length at the high end of the range. If he is civilly committed, he faces a potentially lengthy confinement, possibly for the rest of his life. Thus, even without involuntary medication, Mr. Anderson likely will remain in custody for at least as long, if not longer, than the term of incarceration he would face if convicted. It is difficult to see how involuntary medication would further an important governmental interest in this situation.

Finally, I must "consider any other significant factors that could strengthen or weaken the governmental interests in prosecuting [the defendant], including the extent to which delaying the prosecution could jeopardize the government's position at trial." *Brooks*, 750 F.3d at 1097. The parties offered no evidence on this point. While I can surmise that the witnesses' memories may fade somewhat over time, there is no indication that those memories could not be refreshed by reference to documents and photographs produced at the time of Mr. Anderson's arrest. I am aware of no "other significant factors" regarding the governmental interests in prosecuting Mr. Anderson.

"The *Sell* factors . . . represent . . . a set of independent requirements, each of which must be found to be true before the forcible administration of psychotropic drugs may be considered constitutionally permissible." *Ruiz-Gaxiola*, 623 F.3d at 691. The Government must prove the relevant facts for each factor "by clear and convincing evidence." *Id.* at 692. The Government has failed to satisfy this heavy burden with regard to the first *Sell* factor. Therefore, I cannot order the involuntary medication of Mr. Anderson.

### **The Government has satisfied the other *Sell* factors.**

Although the Government has not satisfied the first *Sell* factor, I note that it appears that the Government has satisfied the remaining factors. During the *Sell* hearing, Mr. Anderson's counsel attempted to discredit the diagnosis of schizophrenia made by Drs. DeMier and Sarrazin.

1  Counsel pointed out that the diagnosis did not strictly follow the requirements of the DSM-V,
2  which requires six months' of observations of two of the five listed symptoms for schizophrenia.
3  However, Dr. DeMier testified that while the DSM-V is a "very useful tool" and is currently the
4  "best system" doctors have, it is not infallible and they are not required to follow it. *See*
5  Testimony of Dr. DeMier on October 21, 2015.[4] Dr. DeMier testified that the evidence of Mr.
6  Anderson having schizophrenia "is admittedly tenuous" but it "is the most logical, most
7  reasonable explanation for how he is." (Dkt. #78 at 74-75 (Testimony of Dr. DeMier on October
8  7, 2015.)) He believes that Mr. Anderson "fits the diagnostic criteria for schizophrenia but he
9  does not hold that opinion with the same degree of confidence as usual." (*See* Testimony of Dr.
10 DeMier on October 21, 2015.) Dr. Sarrazin admits that Mr. Anderson exhibits symptoms for a
11 number of different illnesses, but that is because symptoms of schizophrenia are shared with other
12 mental illnesses. (Dkt. #78 at 171-174 (Testimony of Dr. Sarrazin on October 7, 2015).) This, he
13 feels, is why Dr. DeMier's diagnosis is "tenuous." Finally, during the *Sell* hearing, both parties
14 played audiotapes of jail calls by Mr. Anderson. Dr. DeMier testified that those tapes, which he
15 had not heard before, strengthen his belief that Mr. Anderson suffers from schizophrenia. *See*
16 Testimony of Dr. DeMier on October 21, 2015. I agree.

17       As to the third and fourth *Sell* factors, if the diagnosis of schizophrenia is correct, then the
18 treatment regimen proposed by the Government appears necessary and medically appropriate. (*Id.*
19 at 118-132 (Testimony of Dr. Sarrazin).) Both doctors testified that Mr. Anderson will not
20 recover from his mental illness on his own, and Mr. Anderson presented no evidence to counter
21 that position.

22       "Under the second *Sell* factor, a court "must find that administration of the drugs is
23 substantially unlikely to have side effects that will interfere significantly with the defendant's
24 ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." *Brooks*,
25 750 F.3d at 1097 n. 7 (citing *Sell*, 539 U.S. at 181). The medications proposed by the Government

---

[4] Dr. Sarrazin agreed that the DSM-V is not the only tool or set of criteria to diagnose schizophrenia. *See* Testimony of Dr. Sarrazin on October 19, 2015.

do not appear to cause significant side effects that would affect Mr. Anderson's ability to work with his counsel in preparing his defense. (Dkt. #78 at 121-123, 126- 132-139 (Testimony of Dr. Sarrazin).) Mr. Anderson has presented no evidence to contradict the testimony of Dr. Sarrazin on this point.

**Conclusion**

Because the Government has not satisfied the first *Sell* factor by clear and convincing evidence, I cannot order the involuntary medication of Mr. Anderson. Therefore, the Government's request to do so is denied. The parties are hereby ordered to confer about how this case should proceed, and shall file a joint or separate status reports by January 8, 2016.

DATED this 17th day of December, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE